UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DALE G. BENJAMIN                                               CIVIL ACTION

VERSUS                                                         NUMBER: 17-07014

MARLIN GUSMAN                                                  SECTION: "F"(5)

### REPORT AND RECOMMENDATION

This 42 U.S.C. §1983 proceeding was filed *in forma pauperis* by *pro se* Plaintiff, Dale G. Benjamin, against Defendant, Marlin Gusman, Sheriff of Orleans Parish.

At the time that he authored his complaint, Plaintiff was an inmate of the Orleans Justice Center ("OJC," formerly the Orleans Parish Prison) in New Orleans, Louisiana.[1] In his complaint, Plaintiff relates that on an unspecified date, he was bitten by a spider or some other vicious bug, resulting in pain and swelling to his arm as well as other symptomology. (Rec. doc. 9-2, p. 4). Plaintiff then goes on to complain of the inadequacy of the medical care that he has received at OJC for a variety of conditions, including problematic discs in his back and neck, two hip replacements, a bullet lodged in close proximity to his spine, gastrointestinal issues, fractures to his right wrist and arm, and stomach and chest pain. (*Id.* at pp. 5-8). Plaintiff seeks an undisclosed amount of monetary damages. (*Id.* at p. 9).

As noted above, Plaintiff has instituted suit herein *in forma pauperis* pursuant to 28 U.S.C. §1915. A proceeding brought *in forma pauperis* may be dismissed as frivolous under §1915(e)(2)(B)(i) if the claim alleged therein has no arguable basis in law or fact, *Booker v. Koonce*, 2 F.3d 114, 115 n. 6 (5th Cir. 1993), or if it fails to state a claim upon which relief can

---

[1] Based upon a review of the records of two other lawsuits that Plaintiff filed contemporaneously with this one, it appears that he was recently released from that facility as court-generated mail that was sent to him there has since been returned as undeliverable. (*See* rec. doc. 11 in 17-CV-7017; rec. docs. 11, 12 in 17-CV-7015).

be granted. 28 U.S.C. §1915(e)(2)(B)(ii). *See also* 28 U.S.C. §1915A(b), 42 U.S.C. §1997e(c). Giving the instant complaint a liberal reading, it is recommended, for the reasons that follow, that this matter be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

Plaintiff gives no indication in his compliant of the capacity(ies) in which the sole Defendant, Sheriff Gusman, is being sued. "When a pro se plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity." *Douglas v. Gusman*, 567 F.Supp. 2d 877, 888-89 (E.D. La. 2008). "'In a suit brought against a municipal official in his [or her] official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury.'" *Carter v. Strain*, No. 09-CV-0015, 2009 WL 3231826 at *2 (E.D. La. Oct. 1, 2009)(quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813, 129 S.Ct. 42 (2008)). "'A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity.'" *Id.* (quoting *Colle v. Brazos County, Texas*, 982 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff ". . . must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights." *Id.* (citing *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549 (5th Cir. 2003) and *Treece v. Louisiana*, 74 Fed.Appx. 315, 316 (5th Cir. 2003)).

Measured against the foregoing standards, Plaintiff's allegations against the named Defendant in his official capacity fail to state a claim upon which relief can be granted, as he does not allege that the purported deprivation resulted from a policy or custom, much less identify any such policy or custom. *Carter*, 2009 WL 3231826 at *2. Viewing Plaintiff's allegations as being made against the named Defendant in his individual capacity he fares no

2

better because "[p]laintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)(citation omitted). In addition, "[t]o state a cause of action under §1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, *specifying the personal involvement of each defendant.*" *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996)(emphasis added)(citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Moreover, supervisory officials like the Sheriff cannot be held liable for civil rights violations allegedly committed by their associates based on a theory of strict or vicarious liability. *Fails v. Deshields*, 349 Fed.Appx. 973, 976-77 (5th Cir. 2009); *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2659 (1985). Here, other than naming Sheriff Gusman in the caption of his complaint, Plaintiff presents no facts establishing personal involvement on the Sheriff's part, absent which there is no valid basis to hold him liable under §1983 in his individual capacity. *Allen v. Gusman*, No. 05-CV-1633, 2006 WL 286007 at *3 n. 8 (E.D. La. Feb. 2, 2006)(citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)). However, even if Plaintiff had done so, no valid §1983 claim lies here for the following reasons.

In his statement of claim herein, Plaintiff first complains of being bitten by a spider or other vicious bug. However, the mere presence of spiders or such similar pests does not rise to the level of a constitutional violation. *Simmons v. Gusman*, No. 14-CV-1907, 2015 WL 15113 at *4 (E.D. La. Jan. 12, 2015). Plaintiff goes on to relate that his "... arm was swollen with sores and infection ... [and that] the doctor at the OJC, said I had poison in my system," resulting in residual arm pain and nausea. (Rec. doc. 9-2, p. 4). To the extent that Plaintiff's

complaint can be read as presenting a constitutional claim for deprivation of medical care, in order to prevail on such a claim Plaintiff must demonstrate that the Defendant was deliberately indifferent to his serious medical needs which constituted an unnecessary and wanton infliction of pain.[2/]  *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991). Deliberate indifference is an "extremely high" standard to meet, *Gobert*, 463 F.3d at 346, one that has been equated with "subjective recklessness" as that term is used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).  A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."  *Gobert*, 463 F.3d at 346 (footnote omitted). If an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment was unsuccessful.  *Gobert*, 463 F.3d at 345; *Williams v. Chief of Medical Operations, Forrest County Jail*, No. 94-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854 at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).  That an inmate's medical care "… may not have been the best money could buy" is also insufficient to establish a constitutional violation.  *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

---

[2/] This standard is the same for both pre-trial detainees and convicted prisoners.  *Hale v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

As respects his reported insect bite, pretermitting whether that constitutes a "serious medical need," *Davis v. Gusman*, No. 11-CV-2731, 2012 WL 3150047 (E.D. La. Aug. 2, 2012), *appeal dis'd*, No. 12-30952 (5th Cir. Dec. 3, 2012), Plaintiff readily admits that he was seen by the doctor at OJC who advised him that he had "poison" in his system. His allegations in that regard thus "… address the nature of his treatment and not the lack thereof" and thus fail to rise to the level of a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The fact that the treatment Plaintiff may have received was unsuccessful or that pain or other symptoms persisted does not alter that conclusion. *Gobert*, 463 F.3d at 345; *Williams v. Chief of Med. Operations, Forrest County Jail*, No. 94-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854 at *7 (E.D. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

The foregoing notwithstanding, in light of the allegations presented in Plaintiff's complaint, earlier on in the case the Court issued an order directing that he be evaluated by an OJC physician and that a copy of the medical records that were generated during his stay at that facility be provided to the Court and to Plaintiff as well. (Rec. doc. 10). The delivery of those medical records to the Court, some 550 pages in length, has since been accomplished. (Rec. doc. 14). A review of those records reflects that on August 22, 2017, Plaintiff submitted a "Healthcare Request" form in which he complained of having "… tits (sic) or crabs all over my arms and chest, between my legs." Plaintiff was seen by an OJC nurse that same day who observed no signs or symptoms of ticks or crabs, erythema, or inflammation to Plaintiff's arms, chest, stomach or legs. Plaintiff received an "Acute Care Visit" to an OJC physician on April 26, 2017 for complaints of a rash to the arm and abdomen for two weeks; Plaintiff also reported that his cellmate had complained of itching and had

5

been treated for scabies. Upon physical examination, Plaintiff was observed to have red papular lesions to the left arm and similar ones to his abdomen. He was administered a dosage of Ivermectin.

Plaintiff subsequently submitted another Healthcare Request form on May 4, 2017, complaining that something had bitten him and that his arm was swollen. Once again, Plaintiff was seen by a nurse that same day who ordered a 14-day supply of pain medication and a follow-up appointment was scheduled for May 10, 2017. Another Acute Care Visit went forward on May 5, 2017 for a left arm skin rash erosion and small vesicle eruption with severe pain and burning since April 25, 2017. The attending physician noted that the Ivermectin had not produced any improvement and that Plaintiff had recently taken Amoxicillin and Biaxin for an H. pylori infection in addition to Lisinopril and Omeprazole for other conditions. The assessment was shingles; Plaintiff was prescribed Zovirax, Tramadol, and Mobic.

On May 12, 2017, Plaintiff submitted another Healthcare Request form, complaining that his medication had somehow been discontinued that day, that he had not received a follow-up appointment for his reported spider bite, and that his arm was swollen. He declined to be triaged by the nurse the following day, instead submitting another form complaining of chest and back pain and acid reflux. Plaintiff was triaged by a nurse on May 14, 2017 and later that same day submitted two additional Healthcare Request forms requesting pain and sleeping medication and medication for the reported bite. Plaintiff declined to be triaged by a nurse on two separate occasions on May 15, 2017 and was instead seen by an OJC physician who noted that the shingles on Plaintiff's left forearm had improved. The assessment was gastritis with H. pylori and shingles; Plaintiff was maintained

on Biaxin, Amoxil, Mobic, and Tramadol.  In none of the Healthcare Request forms that Plaintiff subsequently submitted did he make any further mention of any reported insect bite.

In light of the foregoing medical records, records upon which the Court may properly rely, *Gobert*, 463 F.3d at 346 n. 24, Plaintiff falls far short of establishing the objective and subjective components needed to prevail on a claim of deliberate indifference regarding the alleged spider bite, particularly as respects the specifically named, sole Defendant, Sheriff Gusman.  Indeed, the copious nature of the medical records provided to the Court belie any credible claim of deliberate indifference on the part of any OJC medical personnel throughout Plaintiff's stay at that facility.  The majority of the conditions that Plaintiff enumerated in his complaint pre-dated his placement in OJC and during his stay there, he was treated for a myriad of conditions, including an acute peptic ulcer, hypertension, shortness of breath, chest pain, various musculoskeletal conditions, and dental issues.  At one point during his housing at OJC, Plaintiff underwent six separate EKGs within a span of six months.  He was also transported to the emergency room of a local hospital on at least two occasions for treatment of emergent conditions[3]/ and was referred to an outside clinic as needed.  As reflected in an overview from the Director of Medical Services dated November 30, 2017, Plaintiff had no less than 19 physician visits in that calendar year alone and had received ongoing treatment for pain management, GERD, and cardiac issues.

Plaintiff has also received continual mental health treatment for PTSD and major depressive disorder while being housed at OJC, being managed on Nortriptyline.  After Plaintiff was briefly transferred to another correctional facility, upon his return to OJC he

---

[3]/ Plaintiff admits as much in his complaint.  (Rec. doc. 9-2, p. 6).

was promptly re-evaluated and re-started on Nortriptyline to counter the deterioration of his mood.  Notably, the medical records that have been provided to the Court document no less than *32* occasions on which Plaintiff *refused* offered medical treatment.  To the extent that there has ever been any delay in the provision of medical care to Plaintiff at OJC, he makes no showing of substantial harm as a result thereof, *Richard v. Martin*, 390 Fed.Appx. 323, 325 (5th Cir. 2010), and "[e]xperiencing 'occasional delays in obtaining' medical treatment is insufficient to prove a refusal of providing medical care when the inmate's … medical records demonstrate that he received treatment." *Taylor v. Bexar County*, No. 10-CV-0045, 2011 WL 759459 at *4 (W.D. Tex. Feb. 23, 2011)(quoting *Gobert*, 463 F.3d at 346); *Richard*, 390 Fed.Appx. at 324-25.  That Plaintiff may have experienced pain in spite of his treatment is not dispositive.  As observed by the Fifth Circuit, "[c]ontinuing … pain is unpleasant.  Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." *Mayweather*, 958 F.2d at 91.  In short, the determinative issue here is not whether the medical care that Plaintiff received at OJC was substandard in some respect, whether his medical problems or pain persisted, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference *by the named Defendant*.  Based upon a review of the record that is presently before it, the Court easily answers that question in the negative.  Accordingly, it will be recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).4/

New Orleans, Louisiana, this  22nd  day of           February           , 2018.

```
                                         MICHAEL B. NORTH
                                  UNITED STATES MAGISTRATE JUDGE
```

---

4/ *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.